UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GARY DOMORACKI and
CHRISTIE DOMORACKI,

Plaintiffs,

v. Case No.: 2:25-cv-170-SPC-NPM

QBE SPECIALTY INSURANCE
COMPANY,

Defendant.

---

**OPINION AND ORDER**

Before the Court is Defendant QBE Specialty Insurance Company's Motion for Summary Judgment (Doc. 55), Plaintiffs Gary and Christie Domoracki's response (Doc. 60), and Defendant's reply (Doc. 61). Also before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Defendant's first, second, and eighth affirmative defenses (Doc. 48) and Defendant's response (Doc. 56). For the below reasons, the Court grants Defendant's motion and denies Plaintiffs' motion.

**Background**

This is an insurance coverage dispute. Plaintiffs' property incurred damages from Hurricane Ian. They submitted a claim to Defendant.

Defendant acknowledged coverage, but the parties disputed the amount. So Plaintiffs demanded appraisal.

While appraisal was ongoing, Plaintiffs discovered additional damage to their property, purportedly caused by Hurricane Ian. After removing stucco during repairs, they discovered damage to the concrete masonry unit wall ("CMU wall") and columns. They submitted this additional damage to Defendant. Rather than separately adjust for the additional damage or otherwise determine whether the additional loss was covered, Defendant referred it to the appraisal panel.

As appraisals typically go, each party selected an appraiser. Plaintiffs chose William Hughes, and Defendant chose Claudio Navia. The two appraisers then selected an umpire, Jeffrey Pellet, whose role was to resolve any disputes between the them.

The appraisal between Hughes and Navia was going well, except for one sticking point: the CMU wall and columns. (Doc. 55-4 at 5 ("In conclusion, the major disagreement between Mr. Navia and myself is whether the CMU block walls were damaged and needed to be replaced.")). Hughes concluded the wall was damaged by Hurricane Ian and sought to include it in the appraisal award. But Navia disagreed, maintaining that the wall was damaged during the stucco removal. So they asked Pellet to resolve the dispute. (Doc. 55-3 at 13:11–25; 21:22–25).

Both Hughes and Navia presented their respective positions on the CMU wall to Pellet. (Doc. 55-3 at 20:1–10). But Pellet declined to award damages for the CMU wall. According to Pellet, he did not even consider the wall when formulating the appraisal award. (Doc. 48-8 at 4:22–23 ("There was contravening opinions and I elected not to put it in my estimate.")); (*id.* at 5:4–6) ("However, I ultimately decided not to appraise the element of the insured's claimed damages."));[1] (Doc. 48-9 ¶ 8 ("I issued the appraisal award without appraising or considering the claimed damage to the CMU block wall."). He declined to consider the CMU wall because he wanted an independent engineer to evaluate it, but the appraisers would not agree to his approach. (Doc. 48-8 at 4:2–11; 6:5–9). He explained, "it seemed like both part[ies] . . . just wanted an appraisal award and wanted me to rule, and I didn't want to make the ruling without having formality of a - - forensic expert." (*Id.* at 9:9–12).

As a result, the appraisal panel issued an award that did not include damages for the CMU wall. Hughes did not sign the appraisal award, however, because he believed it should have included an award for the CMU wall; he otherwise agreed with everything else. (Doc. 55-3 at 32:12–23).

Needless to say, Plaintiffs are not pleased with the outcome. But they did not dispute the appraisal award (nor do they now). Instead, they sued

[1] In Doc. 48-8, the Court cites to the CM/ECF page number. In all other deposition transcript exhibits, the Court cites to the transcript page number.

Defendant. They claim that because Defendant did not specifically adjust Plaintiffs' additional claim for damages to the CMU wall and columns and because Pellet declined to consider that damage in the appraisal award, these losses remain outstanding. Plaintiffs thus allege Defendant has constructively denied their claim and sue Defendant for breach of contract. (Doc. 3).

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

**Analysis**

Plaintiffs' case hinges on their theory that the claimed loss to the CMU wall and columns remains outstanding. The obstacle to this theory is, of course, the appraisal. To evade this obstacle, Plaintiffs first argue that the CMU wall and columns issue was not ripe for appraisal because Defendant did not first make a coverage determination as to that damage. But even assuming the issue was not ripe for appraisal, Plaintiffs forfeited their right to raise this argument.

Plaintiffs knew Defendant referred the CMU wall loss to appraisal, despite never making a coverage determination. Indeed, Plaintiffs' appraiser, Hughes, testified that he discussed the CMU wall damage with Plaintiffs and that he intended include it in his estimate. (Doc. 55-3 at 33:11–15). If they thought the issue was not ripe for appraisal, they should have raised it then and there. But they did not. Rather, they waited until after they received an unsatisfactory appraisal award to cry foul. Plaintiffs "cannot keep a proverbial ace up [their] sleeve in case things go badly and wait until [they] received a final adverse ruling to state [their] concerns." *Biscayne Beach Club Condo. Ass'n, Inc. v. Westchester Surplus Lines Ins. Co.*, 2022 WL 18776152, at *10 (S.D. Fla. Mar. 1, 2022), *aff'd*, 111 F.4th 1182 (11th Cir. 2024) (cleaned up and

citations omitted). So it is too little, too late for Plaintiffs to raise the issue now.[2]

Next, Plaintiffs contend their claim for CMU wall and column damage remains outstanding because the appraisal umpire, Pellet, did not consider that damage when issuing the appraisal award. But Pellet's conduct is not Defendant's concern. The record is clear that both appraisers considered the CMU wall/column loss. In fact, it was the only "sticking point" between the appraisers; they otherwise agreed on the other loss items. So it was Pellet's role to resolve this dispute. That he failed to do so, at best, gave rise to a claim to vacate the appraisal award under Florida Statute § 682.13.[3] It does not give rise to a breach of contract claim against Defendant.

In sum, Defendant referred the CMU wall and column loss to the appraisal panel. The panel considered the issue but did not include that loss in the appraisal award. Although Plaintiffs are dissatisfied with the process and the outcome, the unsatisfactory result is not Defendant's fault and does

---

[2] Defendant separately filed a motion arguing Plaintiffs should be equitably estopped from arguing appraisal was not ripe. (Doc. 46). Given the Court's holding that Plaintiffs forfeited the argument, the Court denies the motion as moot.

[3] This section discusses vacating arbitration awards. *See* Fla. Stat. § 682.13. "Florida state and federal courts have consistently held that Florida's Arbitration Code, Fla. Stat. § 682.13, provides the grounds for vacating appraisal awards. *Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.*, 345 F.R.D. 532, 535 (N.D. Fla. 2024). The Federal Arbitration Act is another option. *See* 9 U.S.C. § 10(a); *Milligan v. CCC Info. Servs. Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (appraisal constitutes an arbitration for purposes of the FAA).

not give rise to a breach of the policy. So the Court grants summary judgment in Defendant's favor.

The Court briefly addresses Plaintiffs' motion for partial summary judgment as to Defendant's first, second, and eighth affirmative defenses. (Doc. 48). Defendant asserts in its first affirmative defense that although Plaintiffs seek to recover on a supplemental claim, they never made a supplemental claim. (Doc. 26 at 4). Defendants second affirmative defense asserts that Plaintiffs' claim for additional damages was sent to appraisal and considered by the appraisal panel. (Doc. 26 at 4). In its eighth affirmative defense, Defendant asserts that Plaintiffs made certain misrepresentations that bar coverage. (*Id.* at 6–7). Given the foregoing discussion, the Court denies Plaintiffs' motion as to Defendant's second affirmative defense. Plaintiffs' motion is otherwise moot as to Defendant's first and eighth affirmative defenses.

Accordingly, it is

**ORDERED:**

(1) Defendant's Motion for Summary Judgment (Doc. 55) is **GRANTED**.

(2) Plaintiffs' Motion for Partial Summary Judgment (Doc. 48) is **DENIED in part and DENIED as moot in part**.

(3) Defendant's Motion to Preclude Plaintiffs from Arguing Appraisal Was Not Ripe (Doc. 46) is **DENIED as moot**.

(4) The Clerk is **DIRECTED** to enter judgment for Defendant and against Plaintiffs, terminate any deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 6, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record